IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| VICTOR ANDREW APODACA #2143720 | § | |
| VS. | § | CIVIL ACTION NO. 6:23cv156 |
| UNKNOWN 1, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRTE JUDGE

Plaintiff Victor Andrew Apodaca filed a *pro se* complaint under 28 U.S.C. § 1983 complaining of alleged violations of his constitutional rights as a prisoner in the Texas Department of Criminal Justice (TDCJ). The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is the motion by Defendants Legard, Engoro, Antwi, Hudson, Garren, and Davis seeking summary judgment due to Plaintiff's failure to exhaust administrative remedies. (Dkt. #44.) Plaintiff responded in opposition to the motion. (Dkt. #51.) The motion for summary judgment is now ripe for review. For the reasons explained below, the undersigned recommends that the motion be denied.

I. **Plaintiff's Allegations**

Plaintiff alleges that on September 7, 2022, he was subjected to violations of the Eighth Amendment when Defendant Hudson sprayed an entire can of chemical spray on him when he was not physically resisting, followed by all Defendants' physically assaulting him as he was restrained and defenseless, resulting in multiple injuries, and a manual body cavity search. (Dkt. #33 at 4, 7–8.) After these displays of excessive force, Plaintiff alleges that he was denied medical

attention for his injuries and was housed for days in a cold cell without clothing. (*Id.* at 8–10.) He seeks $500,000 in monetary damages. (*Id.* at 4.)

## II. The Parties' Briefs and Evidence

    A.  Defendants' motion

Defendants assert that TDCJ has a 2-step grievance process to resolve issues relating to conditions, comprising a Step 1 grievance to prison officials and a Step 2 appeal. (Dkt. #44 at 5–6.) To prove that fact, they have filed the portion of the TDCJ's Offender Orientation Handbook that governs "Grievance Procedures for Offenders." (Dkt. #44-1 at 85–87.) Defendants describe the process as follows:

> A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. Ex. B at 73–74. Once an inmate receives a response to his Step 1 grievance, he then has fifteen days to file a Step 2 grievance to appeal an unfavorable result at the state level. *Id.* The Offender Orientation Handbook explains that offenders may either place a completed grievance into a grievance box themselves or hand it directly to a grievance investigator in their unit. Ex. B, at 73. Prior to filing a grievance, an inmate must also attempt to informally resolve the problem. *Id.*

(Dkt. #44 at 5–6.)

Defendants further assert that Plaintiff failed to exhaust that grievance process with respect to the events described in his complaint and that his records do not include any grievance at all filed within fifteen days of September 7, 2022. (Dkt. #44 at 7.) They also assert that there is no evidence that Plaintiff attempted to resolve his issue informally, as required by TDCJ grievance rules before filing a grievance. (*Id.*)

Defendants acknowledge that Plaintiff submitted two grievances that relate tangentially to this matter. First, on October 20, 2022, he submitted Grievance #2023026381, in which he complained of not receiving a response to an excessive force grievance he said he submitted on September 22, 2022. (Dkt. #44 at 7; Dkt. #44-1 at 14–19.) They attach an authenticated copy (*see*

2

Dkt. #44-1 at 1) of that grievance to their motion, establishing that Warden Marshall responded to it as follows on November 2, 2022:

> An investigation was conducted into your grievance. The investigation found no evidence to show that you have an open step 1 grievance. Evidence did show that you have 4 step 2 grievances that are open at this time, but none of them were open around the date of 09/22/2022. Grievances are picked up every work day in accords with policy. Nothing further action [sic] is warranted by this office about the matter.

(Dkt. #44-1 at 15.)

Plaintiff appealed that response on November 15, 2022. He asserted that "the whole issue that is being grievanced is the fact that I turned in a step 1 on Sep-22-22 . . . ." (Dkt. #44-1 at 60–61.) The response to that appeal, dated February 25, 2023, is:

> A review of your grievance listed in your complaint shows the grievance blah blah blah [sic] was in fact screen [sic] appropriately. The step 1 response was appropriate and there was no evidence of staff misconduct or that grievances are not being processed according to policy. No further action warranted.

(Dkt. #44-1 at 61.)

On March 4, 2023, Plaintiff submitted another grievance, #2023080937, in which he asked why Grievance #2023026381 had not been answered. (Dkt. #44-1 at 28–29.) He said "am trying to see why I haven't been given a response seeing how it's dealing with a use of excessive force by officers in A&B pods corridor" and went on to describe the alleged events in detail. (*Id.* at 28.) He said he had submitted a Step 2 grievance in November and that the response was long overdue. (*Id.* at 29.) The response, stamped returned to Plaintiff on April 14, 2023, addresses the return of Plaintiff's Step 1 response rather than the Step 2 response he asserted was missing:

> Your grievance has been investigated. There was a Step 2 received on 11/22/2022. A Step 2 grievance cannot be processed without a Step 1 attached, therefore your Step 1 grievance #2023026381 would have been received by you prior to submitting your Step 2. No further action is warranted.

3

(*Id.* at 28–29.) A memorandum in the grievance file indicated that the Step 2 grievance about which Plaintiff was inquiring had been processed but not yet received at the Michael Unit as of March 17, 2023. (*Id.* at 33.)

Defendants observe that both the grievances described above concern allegedly missing grievance responses, and that there is no grievance in Plaintiff's file directly pertaining to the actual events that form the basis of this lawsuit. (Dkt. #44 at 9.) Accordingly, Defendants assert that they are entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

B. Plaintiff's response and additional summary judgment evidence

In his response, Plaintiff asserts that TDCJ officials interfered with his efforts to exhaust his administrative remedies by refusing to process his original grievance about the events underlying this suit and denying his having turned it in even though his submission should have been on camera. (Dkt. #51 at 5.) He thus alludes to his allegation in his sworn amended complaint about having submitted that grievance:

> Plaintiff is further advising this Honorable Court that on September 22, 2022, Plaintiff was taken to medical. While being taken to medical Plaintiff took his Step-1 grievance from this incident(s) himself to the grievance box on 12 Bldg B-pod 2-Row "12-B-27" 2-section at 9:30 a.m. addressing these issues which came up missing.

(Dkt. #33 at 10.) Because this statement is asserted to be true and correct under penalty of perjury (*id.* at 5), the Court considers it among the summary judgment evidence in the record. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("A plaintiff's verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e).").

4

### III. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.

*EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**IV. Discussion and Analysis**

Congress enacted the PLRA in 1996, mandating that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013)

(explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90–91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). The Court explained that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The Fifth Circuit has explained the procedures to be followed with regard to claims of failure to exhaust:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only. *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

The record in this case contains conflicting evidence about whether Plaintiff exhausted his administrative remedies. On one hand, Defendants assert that he did not and point to the 70 pages of grievance records that the grievance custodian testifies are all the grievances he submitted between September 1, 2022 and July 24, 2023, which do not contain a grievance directly pertaining to the events underlying this suit. (Dkt. #44-1.)

But on the other hand, Plaintiff attests in a sworn pleading that he did submit such a grievance. (Dkt. #33 at 10.) Defendants cite case law for the proposition that vague and conclusory allegations that a prisoner submitted a grievance that disappeared cannot satisfy the exhaustion requirement. (Dkt. #44 at 6–7.) But Plaintiff's assertion does not fall into that category.

First, as already observed, Plaintiff's statement is in a sworn amended complaint. And he provides the date, time, and location of his submission and even states that it should have been captured on camera. (Dkt. #33 at 10.) The United States Court of Appeals for the Fifth Circuit has instructed that "[i]t is possible for a party to demonstrate the existence of a genuine issue of material fact through reliance on a single declaration" and held that a prisoner can create such an issue concerning exhaustion by filing a sworn statement that he filed grievances to which he did not receive a response, despite their absence from the moving defendants' proof. *Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024). Distinguishing one of the very cases upon which Defendants rely, the court rejected the argument that a prisoner's assertion about a missing grievance can never suffice to survive summary judgment:

> The defendants argue that if a litigant "can simply issue a sworn declaration that he did exhaust administrative remedies," he could "self-generate an issue of material fact," rendering both the summary judgment standard and the exhaustion requirement essentially meaningless. But even accepting that argument, Favela did not simply declare that he exhausted his remedies; he provided specific facts to counter the defendants' prima facie showing. Moreover, he swore to the truth of those representations under penalty of perjury—one fact among others that distinguishes this case from those where we found a litigant's written statements to

be insufficient. *See*, *e.g.*, *Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012). *Id.* at 1215. Plaintiff here also provided specific facts and swore to his assertion, and the Court is required to accept his assertion as true for the purposes of summary judgment. *Id.* at 1214 ("Presented with a declaration that was not defective . . ., the district court was required to believe the facts and make all justifiable inferences in Favela's favor."); *Chester v. Samuels*, 740 F. App'x 410, 411 (5th Cir. 2018) ("A prisoner's verified complaint is competent summary judgment evidence, and, as the nonmovant, we presume his verified version of any disputed fact to be true."). "Any assessment of that statement's credibility is a matter for trial, not summary judgment." *Favela*, 91 F.4th at 1215.

Moreover, additional evidence in the record arguably corroborates Plaintiff's declaration. It is uncontested that he later submitted multiple grievances ostensibly seeking exhaustion of the grievance he says was never returned. And Defendants' proof includes a large volume of grievances by Plaintiff during a ten-month period covering issues ranging from a malfunctioning electronic tablet to property damage from a flooding toilet. (Dkt. #44-1 at 2–3, 58–59.) As Plaintiff asserted in his Step 2 appeal of grievance #2023026381, "I grievance when I get done wrong, and to think I wouldn't grievance an incident where I was physically injured just cause they wanted to hurt me [is] highly unlikely." (Dkt. #44-1 at 61.) A fact-finder making all inferences in Plaintiff's favor could reasonably find on the basis of his sworn pleading and this corroborating evidence that he did, in fact, submit a grievance about the events that gave rise to this lawsuit.

In other words, the record in this case demonstrates a genuine issue of material fact regarding whether Plaintiff exhausted his administrative remedies prior to filing suit.

RECOMMENDATION

Accordingly, the undersigned recommends that Defendants' motion for summary judgment (Dkt. #44) be **DENIED.**

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 26th day of February, 2024.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE